UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

Kwame Gyamfi )
    *Plaintiff* )
                                                    Case No. DKC09CV3001
vs. )
 )
Wells Fargo –Wachovia Bank )
    *Defendant* )

## MOTION FOR DEFAULT JUDGMENT
## PURSUANT TO FRCP RULE 55

### INTRODUCTION

1. Now comes, Kwame Gyamfi, seeking a default judgment under the Federal Rules of Civil Procedure ("FRCP") Rule 55 against the defendant for failure to answer the complaint due on or before February 11th, 2010 (See docket no. 14). As of to the date of this filing, the defendant, *Wells Fargo-Wachovia Bank*, has failed to motion for an additional extension or file an answer to the amended complaint filed on December 7th, 2009 (See docket no. 6).

2. The plaintiff, Mr. Gyamfi, argues that the court has the authority under FRCP Rule 55 to grant this motion for the defendant's violation of this court's order that established the February 11th, 2010 deadline. Furthermore, the plaintiff asks this court to grant his motion based on the criteria established by the U.S. Court of Appeals 6th Circuit decision in *Shepard Claims Services, Inc. vs. William Darrah & Association U.S. 6th Cir. 1986*. The *Shepard* decision established three categories to consider when evaluating a FRCP Rule 55 decision: 1) prejudice of the plaintiff 2) Merit of the defense case and 3) culpability of the defendant.

### LEGAL ARGUMENT

*Prejudice of the Plaintiff*

3. The plaintiff argues that the court has already granted the defendant two opportunities to adequately answer the plaintiff's complaint (See docket no. 12 & 14). The defendant has not requested an additional extension nor filed an answer to meet this court's deadline. In

the motion for an extension (see no. 13), the counselor for the defendant argued that he was working on a case in Nevada in *J.SH vs. Bartech Systems, International* 2:07-CV-00277-RCJ.

4. The defendant is the third largest bank in the United States and has procured the services of a prestigious law firm with offices in Georgia, North Carolina and Maryland. The defendant has an abundant amount of resources to insure that they are adequately staffed to handle their caseload. The plaintiff believes that the defendant has demonstrated a complete disregard for the court and the plaintiff. Therefore, the plaintiff believes that his case would be prejudiced absent a default judgment in his favor.

*Merit of the Defense Case*

5. The statement of facts supported by the exhibits in this case are non disputable. The defendant violated **The Right to Financial Privacy Act** in divulging confidential financial account information and unlawfully seizing his accounts and that of his wife and elder mother. The disclosure and seizure of these accounts was based on a 'bootleg' document someone presented to bank personnel over the counter as a legal court document. The plaintiff informed the defendant that the document was a 'bootleg' instrument that was being used as a 'money laundering' device. The plaintiff sought injunctive relief and requested that the defendant follow the 'Bank Secrecy Act' ("BSA") regulatory process. The BSA process requires that all FDIC protected institutions file 'Suspicious Activity Reports' with the U.S. Department of Treasury Financial Crimes Enforcement Network ("FINCEN") when 'money laundering' instruments are processed and discovered by the bank. The defendant ignored the plaintiff's request to restore the accounts and follow the BSA regulatory process. Lastly, the defendant failed to provide the name of the perpetrator that committed the fraud so that he may complete the report he filed with the local police authorities in his district. The defendant has not offered an adequate defense based on the allegations alleged in the complaint.

*Culpability of the Defendant*

6. The defendant's motion for an extension lays the foundation for culpability in their actions. The defendant makes light of the "$800" dollars seized from the accounts. However, $400 dollars of that amount is the monthly Social Security benefits his elder mother receives from the government. Hence, the defendant has demonstrated a "willful"

and "intentional" disregard for the plaintiff's complaint, the BSA regulatory process and this court's rules and procedures. The plaintiff understands that the defendant may view monthly Social Security benefits as unimportant and minuscule, however, countless U.S. citizens are using these benefits to live on 'fixed incomes'. Therefore, the plaintiff asks this court to consider the actions of the defendant and hold them accountable in awarding a default judgment in his favor.

**WHY THE COURT SHOULD GRANT A JUDGMENT**

7. It is estimated that fraud in the public Health and Human Services sector costs the U.S. taxpayers an annual $60 billion dollars in false claims submitted to the U.S. Treasury. This amount of money equates to $165 million dollars a day in bogus transactions and false claims. Examples of these false claims are "Nursing Homes" for the elderly that withhold death certificates in order to collect additional Medicaid benefits; another example would be substance abuse treatment centers that inflate the number of clients in order to bill the U.S. Treasury in reimbursement payments. The plaintiff is convinced that the "public consciousness" lags far behind the moral decline of the public's most trusted institutions. In the plaintiff's particular case, state agency employees send out bootleg documents to unsuspecting institutions under the masks of child support, while the unsuspecting employee is totally unaware that behind the bootleg documents is a sophisticated "Welfare" fraud scheme that target lower and middle class working families including his own.

8. The role of banks in combating fraud is central to the success of significantly reducing the annual $60 billion in revenue that fuels the "Fraud, Waste, and Abuse" industry. The common denominator that binds all of the schemes is the banking industry. In the industry of fraud, 99% of the transactions will at some point be laundered through a bank. This is why BSA is so important to the integrity of the U.S. banking industry. When a bank is compliant with BSA guidelines, then the financial privacy and assets of its depositors are less likely to be compromised and we catch the 'bad apples' committing fraud. The plaintiff has already asserted that the defendant is not compliant under BSA and therefore was unable protect the plaintiff's privacy rights and assets. It is the willful

and intentional neglect of the defendant that the plaintiff files this claim and asks this court to grant the relief sought.

9. Why, then should the court grant this judgment. It will serve as a wake call for the banking industry in support of their contribution to the 'larger issues' that affect our society. Their role and significance is too important in combating the 800 pound gorilla we call "Fraud Waste and Abuse". In short, we need their help, but they appear unaware that they have a role to play. A default judgment under the FINCEN formula would get their attention.

**DAMAGES**

10. The amended complaint sought compensatory damages in the amount of $5,000 and punitive damages under U.S.C. Title 12 §3417(a)(3) of the Right to Financial Privacy Act. The plaintiff asked that the court consider the FINCEN formula used to punish banks that are in violation of the Bank Secrecy Act. Hence, the plaintiff has requested and received from the U.S. Department of The Treasury the case files of two banks in violation of the BSA guidelines (Exhibit A). The plaintiff asks this court to consider these formulas in assessing the punitive damages against the defendant in favor of the plaintiff.

11. In the matter of *USA vs. American Express Bank International* (Num. 2007-1), FINCEN (Exhibit B) states "the seriousness of the violations at issue in this matter, and the financial resources available to American Express, the Financial Crimes Enforcement Network has determined that the appropriate penalty in this matter is $25,000,000.

12. In the matter of *USA vs. Doha Bank New York Branch* (Num. 2009-1), FINCEN (Exhibit C) states that the total New York branch assets are valued at "$138 million" and therefore levied a penalty of approximately 4% of the total assets of *Doha Bank* at $5,000,000.

13. The plaintiff believes that the defendant assets far exceed that of both American Express Bank International and Doha Bank combined. Furthermore, the plaintiff believes that the high end judgment in the case study is nowhere near a 4% penalty assessed in the *Doha bank* case in comparison to the 4% of the defendant branch division (Wachovia). However, a significant judgment would bring attention to the important role banks play in fraud prevention. In addition, this judgment would bring attention to the sophistication of the complexity and depth public fraud schemes.

14. WHEREFORE, the plaintiff request that the court consider the mean between both case studies and asses a penalty of $15,000,000 in punitive damages against the defendant based on the FINCEN guidelines.

## CONCLUSION

The plaintiff submits this motion under the Federal Rules of Civil Procedure Rule 55 in seeking a default relief judgment. It appears that the defendant finds this case unimportant and unworthy of their time. The most important aspect of this issue was an attempt to get the defendant to follow the BSA guidelines in order to get assistance in combating public sector fraud that has impacted his family. Therefore, the plaintiff asks this court to enter a default judgment in his favor. He believes that the defendant will move to have it dismissed or at least move towards a genuine settlement conference. In short, the plaintiff is as anxious to close the books on this case as like the defendant.

Executed on _____February_16_, 2010

Signature

Kwame Gyamfi
905 Jackson Valley Ct
Bowie, MD 20721
Phone: (301)997-0941

Wells Fargo Corp.
Legal Department
MAC: A0194-263
45 Fremont St., 26th Floor
San Francisco, CA 94105

Wells Fargo Corp.
Legal Department
MAC: D1053-300
301 South College St.,
Charlotte, NC 28288
Fax: (704)427-3684

Robert A Gaumont
Womble Carlyle Sandridge and Rice PLLC
250 W. Pratt St Ste 1300
Baltimore, MD 21201
Ph: 410-545-5862
Fax: 443-376-1526

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MARYLAND

Kwame Gyamfi )
    *Plaintiff* )    Case No. DKC09CV3001
vs. )
 )
Wells Fargo-Wachovia Bank )
    *Defendant* )

---

**CERTIFICATE OF SERVICE**

I certify, pursuant to Title 28 U.SC. Code 1746, that the following documents were sent via first class to the Legal Department of Wells Fargo Wachovia and the assigned lead attorney of Womble Carlyle Sandridge and Rice PLLC, counsel for the defendant.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on _____November_17_, 2009    *[signature]*

                                                        Signature

                                                        Kwame Gyamfi
                                                        905 Jackson Valley Ct
                                                        Bowie, MD 20721
                                                        Phone: (202)997-0941

Wells Fargo Corp.
Legal Department
MAC: A0194-263
45 Fremont St., 26th Floor
San Francisco, CA 94105

Wells Fargo Corp.
Legal Department
MAC: D1053-300
301 South College St.,
Charlotte, NC 28288
Fax: (704)427-3684

Robert A Gaumont
Womble Carlyle Sandridge and Rice PLLC
250 W. Pratt St Ste 1300
Baltimore, MD 21201
Ph: 410-545-5862
Fax: 443-376-1526