IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

KWAME GYAMFI                         :
                                     :
    v.                               :    Civil Action No. DKC 09-3001
                                     :
WELLS FARGO-WACHOVIA BANK            :
                                     :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case alleging violations of the Right to Financial Privacy Act and related claims is a motion filed by Defendant Wells Fargo Bank to dismiss Plaintiff's second amended complaint. (ECF No. 16). The issues are fully briefed and the court now rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, Defendant's motion will be granted in part.

I.  **Background**

Plaintiff Kwame Gyamfi asserts that he received a telephone call from his wife on November 10, 2009, advising him "about a fraudulent transaction on their joint bank account." (ECF No. 6, at ¶ 5). Plaintiff immediately contacted his bank and learned that "someone . . . walked into a Wachovia Branch Office and presented what appeared to be authentic court papers for 'garnishment' and was able to secure funds from [his] bank accounts." (*Id.* at ¶ 6). Plaintiff requested that the bank

place a "fraud alert" on the account, that it "take action to close [the account] and stop any further transactions," and that it "follow procedure under the Bank Secrecy Act" ("BSA") by opening a "Suspicious Activity Report" ("SAR"). (*Id.* at ¶¶ 6, 7). The Wachovia representative initially agreed to "open[] a fraud alert case number," but later advised Plaintiff that he had "verified with both the legal department and his supervisors that the transaction was legitimate." (*Id.* at ¶ 9). Defendant refused Plaintiff's requests to close the account and open a "Suspicious Action Report," suspended the fraud alert, and froze the account.

On the same date, Plaintiff filed a *pro se* complaint for "Emergency Injunction" in this court. (ECF No. 1). The complaint alleged that Defendant "never provided any documentation of a legitimate court order/judgment that places a levy on [Plaintiff's] bank account[,] and that [Defendant] failed to adhere to [Plaintiff's] request to close the account . . . so as to protect his funds." (*Id.* at ¶ 5). As relief, Plaintiff requested that Defendant be enjoined from allowing such further transactions, that his account be closed, and that any monies removed from the account be awarded back. On November 16, this court issued an order denying Plaintiff's request for emergency injunctive relief. (ECF No. 3). Plaintiff was given twenty-one days to inform the court as to

whether he wished to proceed with the case in normal course, and, if so, to remit the filing fee or move for *in forma pauperis* status and submit a properly completed summons or United States Marshal service of process form.

Later on November 16, Plaintiff filed an "Amended Complaint of Emergency Injunction," reiterating the claims he raised in his original complaint and adding allegations related to events that transpired subsequent to the initial filing. (ECF No. 4). Specifically, he alleged that on November 12, 2009, he obtained a copy of a "bogus" legal document that had been mailed to Defendant's legal processing unit, and that the document was related to a "public corruption welfare scheme" used by "scammers" and "fraudsters" to obtain additional private information. (*Id*. at ¶¶ 11, 14, 15). Plaintiff asserted that bank representatives had been unwittingly complicit in the alleged fraud when they provided private account information by responding to interrogatories submitted along with the "bogus" writ of attachment. In so doing, according to Plaintiff, Defendant violated the Consumer Protection Act as well as the BSA. Plaintiff again asked the court to enjoin Defendant from authorizing any unlawful transactions, and to require Defendant to restore his account and to pay the $350 filing fee associated with this action. On November 20, this court issued an order denying Plaintiff's amended motion for emergency injunction,

3

placing certain exhibits containing personal identifier information under seal, and giving Plaintiff until December 7 to advise the court as to whether he wished to proceed and, if so, to submit a filing fee or *in forma pauperis* motion and a summons or service of process form. (ECF No. 5).

On December 7, Plaintiff paid the filing fee, submitted a United States Marshal Service form, and filed a second amended complaint (ECF No. 6), along with a motion to seal (ECF No. 8). The complaint again alleged facts occurring since the filing of his prior amended complaint. He alleged that on November 14, he "received in the mail a fraudulent legal document stipulating that an 'Administrative Judgment of Condemnation' had been levied against his Wachovia [a]ccount in the amount of $837.67." (ECF No. 6, at 4). Based on this letter, Plaintiff surmised that after "[t]he defendant gave the scammers the $800," *i.e.*, the assets frozen in Plaintiff's account, the alleged "scammers" contacted him in an attempt to obtain additional funds. (*Id*. at ¶ 16). He further asserts that on November 23, he filed a "SAR (Suspicious Activity Report)," and that, the following day, he was contacted by Robert A. Gaumont, an attorney "claiming to represent the interests of Wells Fargo-Wachovia." (*Id*. at ¶¶ 18, 19). After a meeting with Mr. Gaumont on December 2, Plaintiff grew suspicious about the attorney's intentions and "concluded that the defendant, Wells Fargo Bank, might have

4

requested that [Mr. Gaumont] act as a decoy in order to gather 'confidential' information from the [plaintiff] under the cloak of a settlement conference." (*Id*. at ¶ 20).[1]

In his second amended complaint, Plaintiff raises three claims: (1) that Defendant violated the Right to Financial Privacy Act by "unlawfully seizing financial accounts of the plaintiff, his wife and elderly mother and unlawfully divulging the privacy rights of all account holders to third parties without due process and adequate legal documentation"; (2) that Defendant "unlawfully seized the assets of the plaintiff and has refused to release the funds and fully restore the accounts" in violation of the United States Patriot Act; and (3) that Defendant violated the Bank Secrecy Act "by not adequately providing the appropriate training of bank employee personnel on BSA policy and procedure" and by failing to train its "legal processing division . . . on the basic mechanics of knowing a legitimate court order versus 'bootlegs.'" (*Id*. at ¶¶ 25, 27, 28).

On December 11, the court issued an order construing the second amended complaint as a motion for leave to amend and granting that motion. (ECF No. 9). In the same order, the

---

[1] Mr. Gaumont is the attorney of record representing Defendant in this case. Contending that counsel engaged in "unethical and reckless" conduct, Plaintiff has filed a complaint against him with the Attorney Grievance Commission of Maryland. (ECF No. 6, Ex. J).

5

court denied Plaintiff's motion to seal the entirety of his second amended complaint, but granted the motion with respect to certain exhibits containing personal identifier information. Thereafter, the complaint and summons were properly served and, on March 5, 2010, Defendant filed a motion to dismiss, contending that the court lacked subject matter jurisdiction to consider Plaintiff's claims under the BSA and United States Patriot Act and that Plaintiff had failed to state a claim under the Right to Financial Privacy Act. (ECF No. 16). In responding to that motion, Plaintiff denied that he intended to "bring[] forth a 'private' claim under the BSA and Patriot Act laws," but opposed Defendant's argument that the second amended complaint failed to state a claim under the Right to Financial Privacy Act. (ECF No. 20, at 1). Accordingly, the court will limit its review to that discrete claim.

## II. Standard of Review

The purpose of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). Except in certain specified cases, a plaintiff's complaint need only satisfy the "simplified pleading standard" of Rule 8(a), *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 513 (2002), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief,"

Fed.R.Civ.P. 8(a)(2). Nevertheless, "Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 n. 3 (2007). That showing must consist of more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, --- U.S. ----, ----, 129 S.Ct. 1937, 1949 (2009) (internal citations omitted).

In its determination, the court must consider all well-pled allegations in a complaint as true, *Albright v. Oliver*, 510 U.S. 266, 268 (1994), and must construe all factual allegations in the light most favorable to the plaintiff. *See Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999) (citing *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993)). The court need not, however, accept unsupported legal allegations, *Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *Iqbal*, 129 S.Ct. at 1950, or conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979). *See also Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged, but it has not 'show[n] . . . that the

pleader is entitled to relief.'" *Iqbal*, 129 S.Ct. at 1950 (quoting Fed.R.Civ.P. 8(a)(2)). Thus, "[d]etermining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

### III. Analysis

The Right to Financial Privacy Act ("RFPA"), 12 U.S.C. § 3401, *et seq*., "was enacted by Congress 'to protect the customers of financial institutions from unwarranted intrusion into their records while at the same time permitting legitimate law enforcement activity.'" *Chao v. Community Trust Co.*, 474 F.3d 75, 80 (3rd Cir. 2007) (quoting 1978 U.S.C.C.A.N. 9273, 9305). "The RFPA seeks to strike a balance between the right of privacy of customers and the need for law enforcement agencies to obtain financial records as part of legitimate investigations." *Id*. It was passed, in part, to respond to a case that had held that a bank customer had no Fourth Amendment expectation of privacy in personal bank account records. *Duncan v. Belcher*, 813 F.2d 1335, 1337 (4th Cir. 1987).

The Act provides, in § 3403(a), that:

> No financial institution, or officer, employees, or agent of a financial institution, may provide to any Government authority access to or copies of, or the information contained in, the financial records of any customer except in accordance with the provisions of this chapter.

"Financial record" is defined by the RFPA as "an original of, a copy of, or information known to have been derived from, any record held by a financial institution pertaining to a customer's relationship with the financial institution." 12 U.S.C. § 3401(2).

Here, Plaintiff alleges that the writ of attachment and accompanying interrogatories, which were purportedly served on Defendant by the Child Support Services Division of the Office of the Attorney General for the District of Columbia in relation to a 2009 judgment against Plaintiff in the amount of $21,582.79, were fraudulently submitted by unknown, third party "scammers." Plaintiff claims that by freezing the assets contained in his Wachovia account and responding to the interrogatories, as directed by the "bogus" writ, Defendant violated the RFPA and permitted the "scammers to obtain information and unlawfully seize [Plaintiff's] accounts." (ECF No. 20, at 2). Defendant contends that the RFPA claim must be dismissed "because it fails to plead that [Defendant] disclosed any 'financial record,'" as required to establish liability. (ECF No. 16, at 9). According to Defendant, the complaint alleges that the bank "seized approximately $800.00 from Mr. Gyamfi's account based on a writ of attachment which Mr. Gyamfi claims is bogus," but fails to "identify a single 'financial record' allegedly disclosed by Wells Fargo." (*Id.*).

Defendant's argument has merit with respect to Plaintiff's claim that the bank's freezing of the account assets constitutes a violation of the RFPA. Because Plaintiff has not alleged that the seizure of the money involved the disclosure of a "financial record" by Defendant, this could not serve as a basis for liability under the RFPA. In responding to the interrogatories, however, Defendant apparently disclosed the names and addresses of joint holders on the account, as well as the amount contained in the account as of November 10, 2009. (ECF No. 6, Ex. D).[2] This information could constitute a "financial record" under the RFPA, as it is "information known to have been derived from . . . [a] record held by a financial institution pertaining to a customer's relationship with the financial institution." 12 U.S.C. § 3401(2). Thus, the response to the interrogatories that accompanied the writ of attachment at least facially implicates the RFPA.[3] Defendant has presented no further argument with respect to the RFPA claim.

---

[2] The copy of the interrogatory responses attached to Plaintiff's second amended complaint is only partially legible, but it appears to indicate the dollar amount contained in the account.

[3] While the complaint fails to allege that any prejudice resulted from submission of the interrogatory responses – *i.e.*, that the information contained in the interrogatory responses resulted in any loss to Plaintiff – that fact goes to the assessment of damages, not whether a violation has occurred. Moreover, the Act provides for a minimal award regardless of

The court notes, however, that the RFPA specifically regulates disclosure of financial records to a "Government authority." The Act defines "Government authority" as "any agency or department of the United States, or any officer, employee, or agent thereof." 12 U.S.C. § 3401(3). The writ of attachment at issue in this case was purportedly served upon Defendant by the Office of the Attorney General of the District of Columbia, and directed Defendant to respond to the accompanying interrogatories by facsimile or first-class mail addressed to a representative of that office. (ECF No. 6, Ex. D). Plaintiff alleges that the interrogatories were not, in fact, submitted to that government office, but to unknown third-party "scammers" instead. Thus, assuming the truth of the allegations contained in the second amended complaint, as the court must in deciding a motion to dismiss, Plaintiff has not alleged that the interrogatories were submitted to a "Government authority" such that Defendant could be liable under the RFPA. Accordingly, the court will direct Plaintiff to show cause why the RFPA claim, the sole remaining claim in the second amended complaint, should not be dismissed.

---

whether actual damages inured to the plaintiff. *See* 12 U.S.C. § 3417(a)(1).

**IV. Conclusion**

For the foregoing reasons, Defendant's motion to dismiss will be granted as to all claims but a portion of the claim under the RFPA.  Plaintiff will be directed to show cause why that claim should not be dismissed as well.  A separate order will follow.

```
        _____/s/_____
        DEBORAH K. CHASANOW
        United States District Judge
```